Larry BURNS *v.* STATE of Arkansas

90-33                                                    793 S.W.2d 779

Supreme Court of Arkansas
Opinion delivered July 16, 1990

*John C. Wisner III*, for appellant.

*Steve Clark*, Att'y Gen., by: *R.B. Friedlander*, Solicitor General, for appellee.

JACK HOLT, JR., Chief Justice. This case involves Act 715 of 1981, which is codified at Ark. Code Ann. §§ 12-29-501 to -507 (1987) and known as the State Prison Inmate Care and Custody Reimbursement Act.

On March 27, 1981, the appellant, Larry Burns, was convicted of 1) theft of property and sentenced to ten years in the Arkansas Department of Correction, 2) breaking or entering misdemeanor theft of property and sentenced to seven years in the Arkansas Department of Correction to run concurrently, and 3) theft of property and sentenced to five years in the Arkansas Department of Correction to run consecutively.

In November 1986, Burns received an inheritance from his father; the State subsequently filed suit pursuant to Act 715 to recover Burn's estate deposited in his account at the Tucker Unit, in the amount of $6,870.43. The trial court awarded the State a judgment in the amount of $55,888.76 as reimbursement costs for Burn's care.

On appeal, Burns alleges four points of error: 1) the trial court's judgment of $55,888.76 was excessive and not supported by the evidence or by law, 2) Act 715 of 1981 is an unconstitutional bill of attainder in that the State's confiscation of his estate of inheritance results in a corruption of the blood, 3) Act 715 of

1981 is an unconstitutional ex post facto law in that the forfeiture of his estate is a punishment legislatively added after his incarceration, and 4) he was singled out for prosecution under Act 715 of 1981 and was consequently deprived of due process and equal protection of the law.

We agree that the judgment of $55,888.76 was in error and correct the judgment to reflect the actual amount of Burn's estate on account at the Tucker Unit, noted at the time of his trial as $5,850.58.

■ We will discuss Burn's points of error in reverse order and begin with his contention that he was singled out for prosecution under Act 715 and was consequently deprived of due process and equal protection of the law. We note that the record is barren of any proof that Burns was "singled out" and have stated that we will not attempt to respond to an argument lacking entirely in specificity. *Ruiz* v. *State*, 299 Ark. 144, 772 S.W.2d 297 (1989).

Additionally, the act is facially neutral and, as codified, provides in pertinent part as follows:

Section 12-29-503(b)

The Attorney General shall investigate or cause to be investigated all such reports furnished by the Department of Correction, for the purpose of securing reimbursement for the expenses of the State of Arkansas for the cost of care of the prisoners.

Section 12-29-504(a)

Whenever it shall be found that any person has been admitted to a penal facility of the Department of Correction as a prisoner, the Attorney General or the prosecuting attorney of the county from which the person was so sentenced shall, if the person or prisoner possesses any estate or shall thereafter while he shall remain in the institution become possessed thereof, petition the circuit court . . . that the estate may be subjected to the payment to the state of the expenses paid and to be paid by it on behalf of the person as a prisoner.

■ Consequently, the State's pursuit of reimbursement of

the costs of Burn's care under the Code provisions is not violative of Burn's due process or equal protection rights.

Burns next argues that Act 715 is unconstitutional as an ex post facto law. Burns was convicted on March 27, 1981; Act 715 went into effect on June 23, 1981. In support of his argument, Burns contends that the act adds a new punishment to his conviction, in the form of a forfeiture of his estate, by reaching back in time to punish acts that occurred before the enactment of the law.

In *Peeler* v. *Heckler*, 781 F.2d 649 (8th Cir. 1986), the court analyzed an ex post facto law as follows:

> An *ex post facto* law is one which reaches back in time to punish acts which occurred before enactment of the law. A penal statute may also be an *ex post facto* enactment if it adds a new punishment to the one that was in effect when the crime was committed. The appellant contends that § 402(x)(1) as applied to him is such a law, since its sanctions are triggered by the past commission of a felony, and its effect is the forfeiture of a benefit formerly received. However, even if what the appellant says is a true characterization of the statute, we may not hold that it imposes ex post facto penalties unless the law was enacted for punitive purpose. If the law in question is focused on the past crime, then it is likely intended as a punishment, while if the focus is upon the benefit from which the person is barred, it is not, even though the impact on the individual may be harsh.

(Citations omitted.)

In *Peeler*, the court held that a federal statute that suspended social security disability benefits for incarcerated felons was not an ex post fact law, since there was a rational connection between the provision and a nonpunitive goal regulating the distribution of disability benefits. In that case, people in prison have their subsistence needs taken care of by the imprisoning jurisdiction; for such reason, it was entirely rational for Congress to suspend federal disability payments to prisoners.

In this case, too, there is a rational connection between the act provisions and the nonpunitive goal of reimbursement to the State for care and custody expenses from state prison inmates.

Act 715 is not unconstitutional as an ex post facto law as it is not focused on the crimes committed by Burns, nor is it additional punishment.

Burns also alleges that Act 715 is an unconstitutional bill of attainder in that the State's confiscation of his estate of inheritance results in a "corruption of the blood."

In *Nixon* v. *Administrator of General Services*, 433 U.S. 425 (1977)(citing *United States* v. *Brown*, 381 U.S. 437 (1965)), the Supreme Court discussed the key features of a bill of attainder and stated that it was ". . . a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." Bills of attainder are proscribed by Art. I, § 10 of the United States Constitution, which provides that "[n]o State shall . . . pass any Bill of Attainder, ex post facto Law . . . ."

In regard to an act's infliction of punishment, the court in *Nixon* adopted a three test approach: first, whether any feature of the act fell within the historical meaning of legislative punishment; second, whether under a functional test, the law, viewed in terms of the type and severity of burdens imposed, reasonably could be said to further nonpunitive legislative purposes; and third, whether the legislative record evinced a congressional intent to punish.

As a result, the court held that a portion of the Presidential Recordings and Materials Preservation Act, that generally provided that the Administrator of General Services shall take custody of former President Nixon's papers and tape recordings and promulgate regulations for public access to such materials, was not violative of constitutional provisions against bills of attainder because the court found that the statute did not satisfy the specificity element of a bill of attainder and did not inflict the requisite punishment. The court concluded that the challenged act did not rest upon a congressional determination of former President Nixon's blameworthiness and a desire to punish him, but, rather, was an act of nonpunitive legislative policymaking.

In assessing the merits of the historical test, we note that, in England, a bill of attainder originally connoted a parliamentary act sentencing a named individual or identifiable members of a

group to death. Additionally, enactments originally characterized as bills of pains and penalties, legislative acts inflicting punishment other than execution, are also proscribed. Pains and penalties historically consisted of imprisonment, banishment, punitive confiscation of property by the sovereign, and a legislative enactment barring designated individuals or groups from participation in specified employments or vocations. *See generally Nixon* v. *Administrator of General Services, supra; Cummings* v. *Missouri*, 71 U.S. 277 (1866). "The attainder of death was usually accompanied by a forfeiture of the condemned person's property to the King and the corruption of his blood, whereby his heirs were denied the right to inherit his estate. Blackstone traced the practice of *'corruption of blood'* to the Norman conquest." *Nixon* v. *Administrator of General Services, supra.*

■ Burns cannot legitimately claim to have suffered "corruption of the blood" or any of these other forbidden deprivations. In fact, his claim that he was denied the right to inherit from his father's estate is belied by the fact that his inheritance composes the substance of his account at the Tucker Unit, which the State now claims as his estate. Consequently, he has not been prevented from inheriting his father's estate due to his incarceration, nor has he been prevented from bequeathing any remainder of his estate to his heirs that is not subject to the State's claim of reimbursement. The fact that the State's claim encompasses the entirety of Burn's account does not make the act a bill of attainder.

The functional test can be analyzed in the same manner as Burns's argument relating to the act as an ex post fact law. The act reasonably furthers nonpunitive legislative purposes in the form of reimbursement for the care and custody of state prison inmates and, accordingly, is not a bill of attainder under this test.

■ Burns concedes that the motivational test is not applicable to this case as the primary rule in the construction of statutes is to ascertain and give effect to the legislative intent. The first thing we do in construing a statute is to look at the language of the statute and give it its ordinary meaning. *Woodcock* v. *First Commercial Bank*, 284 Ark. 490, 683 S.W.2d 605 (1985).

Consequently, none of these tests affect the constitutionality

of the act as a bill of attainder.

Finally, Burns contends that the trial court's judgment was excessive and not supported by the evidence or by the law. We agree that the judgment was in error as to the amount; however, the State is entitled to the amount of $5,850.58, which was on account at the Tucker Unit at the time of his trial. Section 12-29-502(4) defines "estate" in the context of the act as follows:

> "Estate" means any tangible or intangible properties, real or personal, belonging to or due an inmate confined to an institution of the Department of Correction, including income or payments to the inmate from . . . previously earned salary or wages, bonuses, annuities, pensions, or retirement benefits, or any source whatsoever.

The plain language of the statute reflects that the State is permitted to recover from an inmate's estate, whatever it might be. In this instance, it is $5,850.58.

Affirmed as modified.