The Honorable M. Dee Bennett State Representative P.O. Box 17033 North Little Rock, Arkansas 72117
Dear Representative Bennett:
This is in response to your request for an opinion regarding a proposed ordinance for the City of North Little Rock. In your correspondence, you have outlined the factual basis for this request as follows:
 The City of North Little Rock owns an electric distribution system which supplies electricity to its citizens. Currently, the City purchases wholesale power from Arkansas Power Light Company, which is a subsidiary of Entergy Corporation. The power supply agreement with AP L is scheduled to expire later this year, and the City is considering new power supply proposals from several companies, including AP L.
 The North Little Rock City Council has eight elected members. The citizens of the City also elect a mayor. The City is one of the first class under Arkansas law. The members of the City Council are called aldermen. One alderman, Murray Witcher, has stated that he is an employee of Entergy Corporation.
 Attached hereto is a call dated February 14, 1994 and signed by three aldermen for a special meeting of the City Council on February 17, 1994 to consider an attached proposed ordinance sponsored by four aldermen. The call and the proposed ordinance are incorporated herein as facts to be considered.
A copy of the proposed ordinance to which you refer in your correspondence was provided with the request for an opinion and reads as follows:
 WHEREAS, the City Council seeks to avoid and prohibit conflicts of interest when any alderman or the mayor votes on any matter related to the solicitation, consideration, review or selection of suppliers of electric power or a contract for the supply of electric power;
 NOW, THEREFORE, BE IT RESOLVED BY THE CITY COUNCIL OF THE CITY OF NORTH LITTLE ROCK, ARKANSAS:
 SECTION 1: No alderman or mayor shall vote on any matter before the City Council related to the solicitation, consideration, review or selection of suppliers of electric power or a contract for the supply of electric power if the alderman or mayor, within one year of the vote, has been an employee of, or a contractor to, any firm, corporation, business, company or other organization, or any affiliate or parent thereof, which proposes to sell electric power to the City of North Little Rock.
 SECTION 3: That this ordinance shall be in full force and effect from and after its passage and approval.
In your correspondence, you note that at the February 17, 1994, special meeting, North Little Rock City Attorney Randall W. Morley provided a legal opinion that the proposed ordinance "violates the United States Constitution as a bill of attainder" under Article I, § 10, clause 1 of the Constitution. You also indicate that a vote was not taken on the proposed ordinance at the February 17 special meeting. With regard to the proposed ordinance, you have asked for an opinion on the following three questions:[1]
 1. If enacted, would the proposed ordinance attached hereto be in violation of the United States or Arkansas Constitutions?
 2. If enacted, would the proposed ordinance attached hereto violate any Arkansas case law?
 3. If enacted, would the proposed ordinance attached hereto unlawfully conflict with any statute or law of Arkansas?
With regard to your first question, I will begin by setting forth the legal principles relating to bills of attainder, since in your correspondence you have referred to City Attorney Randall Morley's opinion that the proposed ordinance would violate the United States Constitution as a bill of attainder.
Bills of attainder are forbidden by Article I, § 10, cl.1 of the United States Constitution, which provides that "[n]o state shall . . . pass any bill of attainder. . . ." See also
Art. I, § 9, cl. 3 of the United States Constitution (stating that the United States Congress shall not pass bills of attainder). Similarly, Article 2, § 17 of the Arkansas Constitution states that "[n]o bill of attainder . . . shall ever be passed. . . ." A bill of attainder has been described as "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial."[2] Selective Service System v. Minnesota PublicInterest Research Group, 468 U.S. 841, 846-47, 104 S.Ct. 3348,3352, 82 L.Ed.2d 632 (1984) (quoting Nixon v. Administrator ofGeneral Services, 433 U.S. 425, 468, 97 S.Ct. 2777,53 L.Ed.2d 867 (1977)). See also Burns v. State, 303 Ark. 64, 68,793 S.W.2d 779 (1990) (citing Nixon for definition of bill of attainder). Thus, the elements for a bill of attainder can be summarized as follows: (1) specification of the affected persons, (2) punishment, and (3) lack of a judicial trial. In determining whether a law is a bill of attainder, it is necessary to make an inquiry into whether each of these definitional elements is present in the law at issue. See generally United States v.O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).
As to the "specificity" element, the United States Supreme Court has used various language in describing it. The editors of American Jurisprudence have summarized the various cases of the Court as follows:
 [I]t has been recognized that . . . a bill of attainder may be addressed to a group or a class, the simple fact that an enactment is directed to a group or class rather than to an individual not preventing it from being considered a bill of attainder. Further, it has been indicated that specificity may take the form of a description of past conduct rather than the naming of an individual or group, but that a description in terms of present or future conduct does not satisfy the specificity element.
 In regard to the relationship of underinclusiveness to specificity, it has been indicated that the mere fact that an enactment focuses upon one or a few out of many of what can be viewed as a class does not necessarily result in specificity, and that underinclusiveness is not a necessary feature of a bill of attainder.
16A Am. Jur.2d Constitutional Law § 658 (1979). With regard to the specificity element, it is important to note that the United States Supreme Court has expressly recognized that the mere satisfaction of this element does not necessarily mean that a law constitutes a bill of attainder. See Nixon v. Administrator ofGeneral Services, 433 U.S. at 471-72 (stating, "[t]hus, in the present case, the Act's specificity — the fact that it refers to appellant by name — does not automatically offend the Bill of Attainder Clause."); Selective Service System v. MinnesotaPublic Interest Research Group, 468 U.S. at 851 (stating that "[e]ven if the specificity element were deemed satisfied . . . the statute would not necessarily implicate the Bill of Attainder Clause. The proscription against bills of attainder reaches only statutes that inflict punishment on the specified individual or group.")
With regard to the "punishment" element of bills of attainder, the Supreme Court has recognized three tests for determining whether a law penalizes an individual for bill of attainder purposes: "(1) whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, `viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes'; and (3) whether the legislative record `evinces a [legislative] intent to punish.'" Selective ServiceSystem v. Minnesota Public Interest Research Group,468 U.S. at 852 (quoting Nixon v. Administrator of General Services,433 U.S. at 473). These tests are generally referred to as the historical test, the functional test, and the motivational test, respectively.
The historical test involves an analysis of punishment in the terms of what historically has been regarded as punishment for purposes of bills of attainder and bills of pains and penalties under the law of England and the United States. Citing theNixon case, the Arkansas Supreme Court has stated the following on this subject:
 In assessing the merits of the historical test, we note that, in England, a bill of attainder originally connoted a parliamentary act sentencing a named individual or identifiable members of a group to death. Additionally, enactments originally characterized as bills of pains and penalties, legislative acts inflicting punishment other than execution, are also proscribed. Pains and penalties historically consisted of imprisonment, banishment, punitive confiscation of property by the sovereign, and a legislative enactment barring designated individuals or groups from participation in specified employments or vocations.[3]
Burns v. State, 303 Ark. 64, 68-69, 793 S.W.2d 779 (1990).See also Cooper v. Henslee, 257 Ark. 963, 980,522 S.W.2d 391 (1975) (citing Cummings v. The State of Missouri, 71 U.S. (4 Wall.) 277, 18 L.Ed. 356 (1866), and stating in concurring opinion, "[i]n the constitutional sense, [punishment] also includes penalties of a civil nature, by deprivation or suspension of civil or political rights, depending upon attendant circumstances and the causes of the deprivation. Disqualification from the pursuit of a lawful profession or vocation, as well as a bar from government service, may constitute this type of punishment.")
Even if it is determined that the law in question does not impose punishment traditionally judged to be prohibited by the Bill of Attainder Clause (analysis using the historical test set forth above), a law may still constitute a bill of attainder under the functional and motivational tests. See Nixon v. Administratorof General Services, 433 U.S. at 475 (stating "[o]ur treatment of the scope of the [Bill of Attainder] Clause has never precluded the possibility that new burdens and deprivations might be legislatively fashioned that are inconsistent with the bill of attainder guarantee. The Court, therefore, often has looked beyond mere historical experience and has applied a functional test. . . .") The Court in Nixon described the functional test as "analyzing whether the law under challenge, viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes . . . [w]here such legitimate legislative purposes do not appear, it is reasonable to conclude that punishment of individuals disadvantaged by the enactment was the purpose of the decisionmakers." Nixon,433 U.S. at 475-76. The third test, the motivational test, inquires as to "whether the legislative record evinces a [legislative] intent to punish." Nixon, 433 U.S. at 478.
Finally, as your question concerns an ordinance which pertains to conflicts of interest, two other principles relating to bills of attainder should be mentioned. First, it has been stated that municipal ordinances may constitute bills of attainder. See,e.g., Little v. City of North Miami, 805 F.2d 962 (11th Cir. 1986); Crain v. City of Mountain Home, Arkansas, 611 F.2d 726
(8th Cir. 1979). In the Crain case, the appellant was appointed by the City Council of Mountain Home in January of 1978 to fill the unexpired term of the previous city attorney. At the time of the appointment, the position paid $8,400 per year and permitted the private practice of law. In September of 1978, the appellant filed as an independent candidate for the position of city attorney for the next term, beginning January 1, 1979. On the eve of the November election, the city council asked for appellant's voluntary resignation, and upon receiving appellant's refusal, the city council (shortly before midnight on the day before the election), aware that appellant was the sole candidate for city attorney, enacted two ordinances. One ordinance (Ordinance No. 534, which referred to the "City Attorney of Mountain Home" and not to appellant by name) reduced the city attorney's salary to one dollar per year beginning in 1979 and prohibited the city attorney from engaging in the private practice of law. The other ordinance (Ordinance No. 535) referred to appellant by name and removed him from office for the remainder of the term for which he had been appointed. Following adoption of these ordinances, appellant was elected to the office of city attorney and assumed office on January 1, 1979. On February 1, 1979, Mr. Crain advised the council that he believed the two ordinances to be unconstitutional; he subsequently filed suit, asserting that both ordinances were bills of attainder in violation of Article I, § 10 of the Constitution. Finding that both ordinances constituted bills of attainder, the Eight Circuit Court of Appeals stated:
 The imposition on an easily identifiable individual or class of a sanction of mandatory forfeiture of job or office has long been considered punishment under the bill of attainder clause. Nixon v. Administrator of General Services, 433 U.S. 425, 469, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977). . . .
 Ordinance 535 falls squarely within these definitions of a bill of attainder. That legislation clearly names an individual "in such a way as to inflict punishment on [him] without a judicial trial," United States v. Lovett, . . . by requiring Crain to forfeit his job. . . .
 Ordinance 534, while facially constitutional, factually constitutes improper action taken by the council in an effort to make Crain forfeit his position since, as a practical matter, its intent was to punish him if he accepted the rights and obligations of his elective position. Because Ordinance 534 is prospective in application, and salaries of elective officials may be specified by city officials pursuant to Ark. Stat. § 19-1025.1, the district court decided that the ordinance was not penal. But legislation which inflicts a deprivation on named or described persons or groups constitutes a bill of attainder whether its aim is retributive, punishing past acts, or preventive, as in this case, discouraging future conduct. See United States v. Brown, supra, 381 U.S. at 458, 85 S.Ct. 1707.
Crain v. City of Mountain Home, Arkansas, 611 F.2d 726, 728-29
(8th Cir. 1979). The Eighth Circuit rejected the city's argument that Ordinance 534 reasonably furthered the city's "nonpunitive legislative purposes" (the functional test under Nixon) of finding a way to deal with the city's competing demands for city funds and the necessity of employing additional counsel to handle the city's legal problems. The Eighth Circuit rejected this argument based on the city council's actions, which consisted of hiring an attorney to fill the remainder of Mr. Crain's initial term at $40.00 per hour only two days after reducing the salary of the prospective city attorney to $1.00 per year. (This attorney received $2,283 in fees for part-time legal services rendered). The Court concluded that the "dual proscription of limiting the city attorney's salary to $1.00 per annum when in fact Crain was uncontested in his bid for the election, passed simultaneously with an ordinance removing Crain from office on the eve of the election, was punitive in that it intended to constructively bar him from assuming the position to which he was duly elected" and accordingly Ordinance 534 was unconstitutional as a bill of attainder. Crain at 729.
Another principle related to bills of attainder which is particularly pertinent to your case is stated in United Statesv. Brown, 381 U.S. 437, 85 S.Ct. 1707, 14 L.Ed.2d 484 (1965). There the Court recognized "that conflict-of-interest laws, which inevitably prohibit conduct on the part of designated individuals or classes of individuals, do not contravene the bill of attainder guarantee." Nixon, 433 U.S. at 471, n. 34. InBrown, the Court specifically noted the validity of § 32 of the Banking Act of 1933, 12 U.S.C. § 78, which disqualified identifiable members of a group — officers and employees of underwriting organizations — from serving as officers of Federal Reserve Banks.
In light of the foregoing discussion, it is my opinion that the proposed ordinance for North Little Rock in all likelihood does not violate the United States or Arkansas Constitutions as a bill of attainder. Even if the "specificity" element for bills of attainder were met, the punishment element, in my opinion, is probably not. If the mayor or an alderman falls within the provisions of the ordinance, the only "penalty" provided is not being able to vote on one specific type of issue which might come before the city council. Under the historical test for determining whether punishment exists for purposes of a bill of attainder, this "penalty" is not one which has historically been deemed prohibited. There also appears to be a nonpunitive legislative purpose for the ordinance (that of prohibiting members with conflicts of interest from voting) under the functional test for bills of attainder. As for the motivational test, an inquiry into the factual circumstances surrounding the passage of the ordinance would be needed in order to make a determination of whether the legislative intent was to "punish" a person or group rather than to achieve other, permissible goals (such as ethics in government). This office cannot make factual determinations in this regard. Finally, the case of UnitedStates v. Brown, in which conflicts of interest laws are discussed, arguably would apply here. In sum, while it is my opinion that the proposed ordinance in all likelihood does not constitute a bill of attainder, it should be emphasized that such determinations are very fact specific and ultimately only a court can decide. See, e.g., Selective Service System v. MinnesotaPublic Interest Research Group, 468 U.S. at 852 (citing Flemingv. Nestor, 363 U.S. 603, 616 (1960), the Court states, "[i]t is thus apparent that, though the governing criteria for an attainder may be readily indicated, `each case has turned on its own highly particularized context.'") Hopefully, the discussion provided herein on bills of attainder will offer some assistance to you.
With regard to your first question as it relates to all other provisions of the United States and Arkansas Constitutions, I have found none which would prohibit the proposed ordinance. Neither, with regard to your second question, have I found any Arkansas case law which would prohibit the proposed ordinance. It should be noted, however, that as you have posed such broad questions, an exhaustive review of all laws simply is not possible.
With regard to your third question, it has been stated that the validity of city ordinances depends on authority granted by the Constitution or the legislature. City of Little Rock v. Raines,241 Ark. 1071, 411 S.W.2d 486 (1967). See also A.C.A. §14-55-101 (1987). Pursuant to A.C.A. § 14-55-102 (1987), municipal corporations have the power to enact ordinances which are not inconsistent with the laws of this state and "which, as to them, shall seem necessary to provide for the safety, preserve the health, promote the prosperity, and improve the morals, order, comfort, and convenience of such corporation and the inhabitants thereof." As to whether the proposed ordinance is consistent with state laws, it should be noted that there are other provisions relating to conflicts of interest. See,e.g., A.C.A. §§ 14-42-107(b)(1) and 21-8-304(a).
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Nancy A. Hall.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] It is my understanding that the issue as to whether North Little Rock Alderman Murry Witcher should participate in matters regarding the city's selection of a power supply company is currently in litigation in the case of Kellum, et al v. Witcher
(Pulaski County Chancery Court No. 94-631). While it is the policy of this office to refrain from issuing opinions on matters which are the subject of pending litigation, it is my understanding that the ordinance on which you have asked for an opinion is not involved in the aforementioned lawsuit, and thus I will respond to your questions.
[2] There is Supreme Court authority indicating that a constitutionally prohibited bill of attainder may exist only as to laws relating to the rights of individual persons and private groups, not as to laws relating to the rights of governments, such as a state or its political subdivisions. See SouthCarolina v. Katzenbach, 383 U.S. 301, 86 S.Ct. 803,15 L.Ed.2d 769 (1966) (state challenged various provisions of the Voting Rights Act, alleging among other things, that the act violated the Bill of Attainder Clause).
[3] For cases involving legislative enactments which barred designated individuals or groups from participation in specified employments or vocations and which were held to be bills of attainder, see these cases: Cummings v. Missouri, 71 U.S. (4 Wall.) 277 (1866) (barring clergymen from ministry in the absence of subscribing to a loyalty oath); United States v. Lovett,328 U.S. 303 (1946) (barring named individuals from government employment); United States v. Brown, 381 U.S. 437 (1965) (barring Communist Party members from offices in labor unions).