5784

488 S.W. 2d 712

Opinion delivered January 8, 1973

[Rehearing denied February 12, 1973.]

*George Howard Jr.,* for appellant.

*Ray Thornton,* Atty. Gen., by: *Henry Ginger,* Deputy Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Curtis Allen, 19 years of age, was found guilty of the rape of an eight-year-old female. The jury fixed the degree at rape in the first degree and the punishment at life imprisonment. Appellant contends that this finding and sentence should be reversed upon the following grounds:

I. The trial court committed error in denying appellant's motion for mistrial.

II. The trial court abused its discretion in permitting the prosecutrix, age 8 years, to testify.

III. Arkansas Statute, Section 41-3401—Degrees of Rape—is void for vagueness.

IV. The trial court erred in refusing to transfer appellant's case to juvenile court.

We find no reversible error. We will discuss the grounds for reversal in the order listed.

## I.

During voir dire examination of jurors the circuit judge made the statement that the appellant was on trial in a capital case and that the penalty for the crime charged was electrocution or life imprisonment. Appellant's attorney was granted a conference in chambers at which he moved for the declaration of a mistrial. After returning to the courtroom, the judge made the following statement:

The court wants to correct an erroneous statement, and this is especially to the number of the jury that have already been seated and to the prospective jurors, an erroneous statement for the record for the penalty for first degree rape, the penalty for first degree rape is death by electrocution or thirty years to life. The court misstated that while ago and I want to correct that statement.

Appellant's reliance upon *Bagley* v. *State*, 247 Ark. 113, 444 S.W. 2d 567, to support a reversal here is unwarranted. There this court held that errors in a statement of the trial judge, prior to voir dire examination of jurors, relating to the crime and the jury's options as to punishment were not cured by the judge's explanation of the forms of verdict submitted to them at the conclusion of the trial and instructions about their use by the jury. In *Bagley*, however, we pointed out that the damage to the defendant could only have been removed by an equally positive statement of correction of a stature equivalent to that of the original erroneous statement. Here that cure was promptly and correctly administered by the trial judge.

## II.

The question pertaining to the testimony of the eight-year-old prosecutrix is probably the most difficult one presented. Preliminary examination of the child victim disclosed that she knew where she lived and her birth date, and was in the second grade at Central Elementary School in Dumas. She was later held to be a competent witness, over the objections and exceptions of appellant, after the following questions and answers:

Q. Do you know what it means to tell the truth?

A. Yes sir.

Q. And will you tell the truth?

A. Yes sir.

Q. Do you know what will happen if you do not tell the truth?

A. Yes sir.

Q. What?

A. You will get punished.

The record discloses that the witness later testified that she attended church and Sunday School regularly and believed in God. Appellant points out that during the course of her examination, the witness failed to answer seven questions, and responded to seven others by nodding her head and to three by shrugging her shoulders.

We agree with the state that the record reveals that the witness, through her testimony, gave evidence of her ability to receive, retain and transmit to the jury accurate impressions. Her failure to answer questions usually occurred when she was called upon to name the intimate parts of her anatomy and that of her assailant. The nodding of her head occurred on both direct and cross-examination in response to some material questions and some immaterial ones. In some instances, the material questions had been or were later fully answered by the witness, and others answered by head-nodding were shown to have been affirmative by other testimony of the child indicating her understanding of the questions and an intention to give affirmative answers. One of the shoulder-shrugging answers was accompanied by the words "I don't know," and another came when she was asked why her assailant pulled her panties down, and the third had to do with the depth of the penetration. Her conduct in this respect appears to have been little different from that of many adult witnesses who testify in such matters as these.

There has never been a precise age fixed by our law for declaring a child either a competent or an incompetent witness in a criminal trial. The trial court has a wide latitude of discretion in determining the competency of such a witness, the exercise of which will not be disturbed upon appeal in the absence of clear abuse. *Harris* v. *State,* 238 Ark. 780, 384 S.W. 2d 477. See also, *Edington* v. *State,* 243 Ark. 10, 418 S.W. 2d 637. With reference to age, we have always, in criminal cases, followed the

common law rule that one under the age of 14 years was not to be presumed to have common discretion and understanding required for competency as a witness, and that inquiry should be made of such a proposed witness as to the degree of understanding possessed by him, in order that the court may ascertain whether he appears to have sufficient natural intelligence and instruction to comprehend the nature and effect of an oath to permit him to testify. *Payne v. State,* 177 Ark. 413, 6 S.W. 2d 832; *Flanagin v. State,* 25 Ark. 92. In *Batchelor v. State,* 217 Ark. 340, 230 S.W. 2d 23, we quoted the rule governing competency of a child's testimony from *Hudson v. State,* 207 Ark. 18, 179 S.W. 2d 165, where we said:

> * * * if the child-witness, when offered, has capacity to understand the solemnity of an oath and to comprehend the obligation it imposes, and if in the exercise of a sound discretion the trial court determines that at the time the transaction under investigation occurred the proposed witness was able to receive accurate impressions and to retain them to such an extent that when testifying the capacity existed to transmit to fact-finders a reasonable statement of what was seen, felt or heard—then, on appeal, the Court's action in holding the witness to be qualified will not be reversed.

As to the requirement of understanding the nature and effect of the oath, we said in *Crosby v. State,* 93 Ark. 156, 124 S.W. 781, that the child must be under an immediate sense of his responsibility to God with a conscientious sense of the wickedness of falsehood. But this court has found no abuse of discretion in the trial court's determination of competency where the child realizes that he is obligated to tell the truth and that he will be punished for not doing so, i.e., that he will be punished for not telling the truth because telling falsehoods results in punishment. In *Crosby,* the witness did not know what the consequences of his failure to testify truthfully would be and was not asked anything from which it could be inferred that he had a sufficient sense of the danger and wickedness of false swearing or that he comprehended and appreciated the sanctity and obligation of an oath. In *DeVoe v. State,* 193 Ark. 3, 97 S.W. 2d 75, we had this to

say regarding and eight-year-old prosecutrix in a rape case:

> As to her competency, it may be said, first, that her competency was peculiarly within the trial court's discretion, and the trial court's ruling on the question will not be disturbed unless there was a gross abuse of discretion * * *. The witness in the present case was eight years old, appeared to be intelligent, to understand what was meant by an oath, and she testified intelligently. We are of the opinion that the trial court did not abuse its discretion in permitting the witness to testify.

We cannot say that there was an abuse of the judge's discretion in this case. Our view in this regard is bolstered by the apparent intelligence of the witness disclosed by her testimony and the responsiveness of her answers to the questions propounded to her.

### III.

Appellant argues that, since a male may be found guilty of rape in the third degree when he engages in sexual intercourse with a female less than 16 years of age, of rape in the second degree if he is over the age of 18 years and engages in sexual intercourse with a female less than 14 years of age, and of rape in the first degree if he engages in sexual intercourse with a female less than 11 years of age, the statute [Ark. Stat. Ann. § 41-3401 (Supp. 1971)] is void for vagueness because it affords no meaningful or material guidelines for distinguishing the three degrees of rape. Our examination of the statute does not support the assertions in appellant's brief that it is a mass confusion of ambiguities and uncertainties and inexplicable contradictory statements. It seems clear to us that the state's interpretation of the statute is correct. The statute defines rape in the first degree as sexual intercourse by a male person of any age with a female of any age accomplished by forcible compulsion, or without compulsion when the female is incapable of consenting by reason of physical helplessness or mental incapacity, or is under the age of 11 years. Rape in the second degree, then, is sexual intercourse by males over 18 years of age

with females between the ages of 11 and 14, with or without their consent. Rape in the third degree is carnal abuse of a female less than 16 years old by a male of any age, or sexual intercourse by a male of any age with a female between the ages of 14 and 16, or sexual intercourse by a male under the age of 18 with a female between the ages of 11 and 14, without regard to the consent of the female in any case.

## IV.

There was testimony by a "psychological examiner" who is licensed by the state to practice psychometrics and who examined Allen when, upon appellant's motion, he was committed to the custody of the sheriff of Jefferson County for mental examination by the Southeast Arkansas Mental Health Clinic. This witness stated that the mental or intellectual age of appellant, according to the Weschsler Adult Intelligence Scale and Peabody Picture vocabulary test, was "approximately 9.6 years of age, somewhere in there," even though his chronological age was 18. This, he said, meant that "mentally he [Allen] is perceiving and functioning as a nine- or ten-year-old individual with reference to judgment, insight, general information, abstract reasoning ability, and, in this case, the psychomotor and perceptional functions." Before trial, appellant had moved that the information charging him be quashed or, in the alternative, that the case be transferred to the juvenile court. His motion was based upon psychiatric and psychological evaluations at the Southeast Arkansas Mental Health Center. The psychiatric evaluation filed with the court concluded that Allen was mentally retarded, functioning at the mental age of 9.4, without insight, was possessed of extremely poor judgment and that his behavior was based on impulses. The psychological evaluation by the examiner who testified at the trial was based upon the following tests:

Weschsler Adult Intelligence Scale
Peabody Picture Vocabulary
Bender Visual Motor Gestalt Test
House-Tree-Person
Incomplete Sentence Blanks

Rorschach
MMPI
Clinical Interview

The examiner recorded this diagnostic impression: "Mental retardation, mild, associated with behavioral reactions." The examiner's summary was that Allen was mildly mentally retarded, knew right from wrong and was capable of feeling remorse for his behavior, but his decision making and goal-directed behavior were based on impulses and his consideration of the possible circumstances of his actions doubtful. He did not appear to the examiner to be a sociopathic individual.

Appellant also points out that a 14-year-old sister of the prosecutrix described Allen as childish in conduct, physical appearance and activities and that a 16-year-old witness bearing the same surname as his gave testimony that would indicate that appellant's activities were rather childish. It should be noted that the 16-year-old, when asked how old Curtis Allen acted, responded "18." Appellant also calls our attention to the fact that the court recessed the trial and conducted an in camera hearing because, during the opening statements to the jury, appellant was sitting with his face down on the table folded in his arms as if he were asleep. The judge attempted to determine whether there was some reason for Allen to sit in the courtroom in this position rather than the normal upright position.

As the basis for his motion in the trial court, appellant contended that his prosecution is barred by Ark. Stat. Ann. § 41-112 (Repl. 1964), providing that an infant under 12 years of age should not be found guilty of any crime or misdemeanor.[1] In his brief here, he argues that requiring him to stand trial was an abuse of the trial court's discretion and his commitment to the State Department of Correction was cruel and unusual punish-

---

[1] It should be made clear that appellant asserted a defense of insanity at his trial and that the court gave appellant's requested instruction as to this defense, but refused to state the substance of Ark. Stat. Ann. § 41-112 to the jury. The defense of insanity was rejected by the jury, and appellant properly does not base his argument here upon that particular defense.

ment in violation of Article 2, Section 9 of the Arkansas Constitution and of the Eighth Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment.

Even though the argument advanced in the trial court seems to have been abandoned here, we have no hesitancy in stating that the age prescribed by Ark. Stat. Ann. § 41-112 means chronological age, not some "mental" age arrived at by psychological tests and expressive, at least to some extent, of an examiner's opinion. We have set out the record on this point at some length to demonstrate that any variation from chronological age as the basis of one's absolute immunity from criminal responsibility, in the absence of insanity, cannot result from judicial action rather than through the General Assembly where investigative processes can be utilized, not only to ascertain the propriety of such action but to prescribe appropriate standards for the determination of immunity from prosecution because of infancy or immaturity. We find no abuse of discretion in putting appellant to trial and no violation of constitutional inhibitions against cruel and unusual punishment.

The judgment is affirmed.