Rodney BUNCH *v.* STATE of Arkansas

CR 00-1360                                      43 S.W.3d 132

Supreme Court of Arkansas
Opinion delivered May 10, 2001

*James R. Wallace & Associates*, by: *Tammy L. Harris*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.

JIM HANNAH, Justice. This appeal arises from Appellant Rodney Bunch's conviction for aggravated robbery and theft of property. Bunch was convicted as an habitual offender, and sentenced to life in prison under the enhanced sentencing statute. He raises one point on appeal, arguing that the sentencing enhancement provision in Ark. Code Ann. § 5-4-501(d) (Repl. 1997) is unconstitutional as applied to him. We affirm.

*Facts*

On July 19, 1998, Stephanie Springer Transue returned home at about 11:00 p.m. from a business trip and, as she was unlocking her front door, was attacked by a black male whom she had seen moments before across the parking lot at her condominium complex. According to Transue's testimony, the man was carrying some type of weapon, either a knife or a gun, and he pushed her down and demanded her purse and car keys. However, the man ran away when the alarm at Transue's apartment went off. Transue's neighbors called the police, and Transue was able to recover her purse and car keys from the parking lot. She subsequently gave a statement to the police that night, and described her attacker with some detail. She indicated that she got a very good look at her attacker.

On August 6, 1998, Transue identified Bunch from a photo lineup shown to her by Detective Charles Ray of the Little Rock Police Department. According to Transue's and Ray's testimony, it only took three seconds for Transue to identify Bunch as her attacker. Bunch was subsequently charged by felony information on October 6, 1998, on two counts including aggravated robbery, a felony, and theft of property under $500, a misdemeanor. The first trial in this matter occurred on March 4, 1999, and ended in a mistrial due to a hung jury.

The State chose to retry Bunch, and on March 14, 2000, the prosecutor amended the felony information to include a charge that Bunch is an habitual offender because he was convicted on February 4, 2000, of two counts of aggravated robbery and one count of misdemeanor theft of property in an unrelated matter. He was sentenced to 120 months each on the aggravated-robbery counts.

Bunch's attorney filed a motion to declare Ark. Code Ann. § 5-4-501(d) unconstitutional as applied to Bunch. The court denied this motion at a pretrial hearing on April 10, 2000.

Trial was held on April 25, 2000, and the prosecution first presented Transue and Ray who testified about the attack and Transue's identification of Bunch in the photo lineup. Pulaski County Deputy Sheriff Sylvester Nelson testified that after a pretrial hearing on January 4, 1999, Bunch, who was in Nelson's custody, fled from Nelson at the courthouse and was apprehended several blocks from the courthouse. Following the State's case, the defense made the requisite directed-verdict motions, which were denied.

The defense then presented its case. Little Rock Police Officer John Witt testified that he was the first to respond to Transue's call after the attack, and that Transue gave him a description of what her attacker looked like and what he was wearing. Little Rock Police Officer John Bracey testified that at 11:40 p.m. on the night of Transue's attack, he stopped Bunch as he was driving and gave him a traffic ticket. Bracey testified that he patted down Bunch, and that Bunch had no weapons, money, credit cards, or a purse on him or in view in the car. He testified that Bunch had some women with him in the car. Bracey further testified that he had driven the route from Transue's apartment complex to where he pulled Bunch over, and that the entire route took approximately ten minutes in noon-day traffic. Little Rock Police Officer Todd Armstrong testified that he arrested Bunch on August 6, 1998, for robbery, and at the time, Bunch had a tattoo on his left arm. Armstrong testified on cross-examination that Bunch fled when Armstrong tried to pull him over, and that a car chase ensued until he was apprehended. The photo taken of Bunch after his arrest was the same photo used in the photo lineup shown to Transue.

After the defense rested, defense counsel renewed all motions and objections, including the motion challenging the constitution-ality of Ark. Code Ann. § 5-4-501(d) as it applies to Bunch. The trial court again denied the motions. After receiving instructions, the jury retired for approximately one hour, then returned with a unanimous guilty verdict on the charges of aggravated robbery and theft of property. Because the State indicated that it would proceed under the "three strike" provision of the sentencing statutes based on Bunch's prior conviction on two counts of aggravated robbery, the trial court indicated that it would announce to the jury that there was a mandatory life sentence. The defense objected, renewing its motion as to the constitutionality of that provision, arguing that the two previous convictions arose from the same occurrence. However, the court overruled the objection and announced to the jury that it was sentencing Bunch to a life sentence. On May 16, 2000, Bunch moved for a new trial and the hearing was held on this motion on May 22, 2000. The defense again challenged the constitutionality of Ark. Code Ann. § 5-4-501(d) as it applied to Bunch, but the trial court denied that motion again. Bunch filed his notice of appeal on June 12, 2000.

Bunch does not challenge the sufficiency of the evidence, but argues on appeal that the trial court erred in sentencing him to life in prison because the trial court did not follow the sentencing procedures laid out in Ark. Code Ann. § 5-4-502 (Repl. 1997),

which contemplates a sentencing range for the jury to consider and apply. He argues this violates his equal protection and due process rights because it removes from the jury the discretion to apply a punishment within the contemplated "range." Furthermore, Bunch argues that this error also violates the Eighth Amendment to the United States Constitution and Article 2, § 9, of the Arkansas Constitution prohibiting cruel and unusual punishment. Finally, Bunch argues that the mandatory life sentence for an habitual offender who falls within the provisions of Ark. Code Ann. § 5-4-501(d) violates the Separation of Powers Doctrine in the United States and Arkansas Constitutions because it allows the legislature instead of the jury to pass the sentence on a defendant.

### Standard of Review

Statutes are presumed constitutional, and the burden of proving otherwise is on the challenger of the statute. *Ford v. Keith*, 338 Ark. 487, 996 S.W.2d 20 (1999); *ACW, Inc. v. Weiss*, 329 Ark. 302, 947 S.W.2d 770 (1997). If it is possible to construe a statute as constitutional, we must do so. *Jones v. State*, 333 Ark. 208, 969 S.W.2d 618 (1998). In construing a statute, we will presume that the General Assembly, in enacting it, possessed the full knowledge of the constitutional scope of its powers, full knowledge of prior legislation on the same subject, and full knowledge of judicial decisions under preexisting law. *McLeod, Comm'r of Revenues v. Santa Fe Trail Transp. Co.*, 205 Ark. 225, 168 S.W.2d 413 (1943). We must also give effect to the legislature's intent, making use of common sense and giving words their usual and ordinary meaning. *Kyle v. State*, 312 Ark. 274, 849 S.W.2d 935 (1993).

### A. Do Ark. Code Ann. §§ 5-4-501(d)(1)(A) and 5-4-501(d)(3)(A)(3) and (4) Conflict and Violate Bunch's Due Process and Equal Protection Rights?

As a first issue, Bunch argues that these statutes conflict in that the first, Ark. Code Ann. § 5-4-501(d)(1)(A), requires that a defendant be sentenced to life in prison while the second, Ark. Code Ann. § 5-4-501(d)(3)(A)(3) and (4), requires that a jury sentence him within the statutory range for the crime. As such, failure to allow the jury to sentence him within that statutory range is a violation of due process and equal protection. Ark. Code Ann. § 5-4-501(d)(1)(A) states:

(d)(1) A defendant who is convicted of a felony involving violence enumerated in subdivision (d)(2) of this section and who has previously been convicted of two (2) or more of the felonies involving violence enumerated in subdivision (d)(2) of this section shall be sentenced to an extended term of imprisonment, without eligibility except under § 16-93-1302 for parole or community punishment transfer, as follows:

(A) For a conviction of a Class Y felony, a term of not less than life in prison;...[1]

Ark. Code Ann. § 5-4-501(d)(3)(A)(3) and (4), however, indicate that the procedure governing sentencing requires the trial court to do the following:

(3) The trial court shall then instruct the jury as to the number of previous convictions involving violence and the statutory sentencing range. The jury may be advised as to the nature of the previous convictions and the date and place thereof.

(4) The jury shall retire again and then determine a sentence within the statutory range.

Clearly, the first statutory provision dictates that a life sentence be imposed while the second provision indicates that the jury must determine a sentence "within the statutory range."

■ ■ Bunch's argument is premised on the idea that Ark. Code Ann. § 5-4-501(d), which requires a mandatory life sentence in certain instances, and Ark. Code Ann. § 5-4-103(a), which allows the jury to impose a sentence within a statutory range, are at odds. While Ark. Code Ann. §§ 5-4-501(d)(1)(A) and 5-4-501(d)(3)(A)(3) and (4) would seem to be inconsistent, our case law detailing sentencing clarifies the seeming discrepancy. This court has basically decided this issue in *Ricks v. State*, 327 Ark. 513, 940 S.W.2d 422 (1997), where the court found that Ark. Code Ann. § 5-4-501 (Supp.1995) requiring a life sentence did not conflict with another statute that allowed the jury to sentence within the prescribed range. While the second statute was different from Ark. Code Ann. § 5-4-501(d)(3)(A)(3) and (4), the reasoning is the same.

---

[1] Aggravated robbery, of which Bunch was convicted here and in his two previous convictions, is considered a felony involving violence subject to this sentencing provision. *See* Ark. Code Ann. § 5-4-501(d)(2)(A)(iv).

Basically, the court found that because the jury is required to fix punishment according to the entire criminal code under Ark. Code Ann. § 5-4-103(a) (Repl. 1997), and the code required that a life sentence be imposed under Ark. Code Ann. § 5-4-501(d)(1)(A), there is no conflict. Nor is there a constitutional right to be sentenced by a jury. *Spaziano v. Florida*, 468 U.S. 447 (1984); *Scherrer v. State*, 294 Ark. 227, 742 S.W.2d 877(1988). The fact that the trial court instead of the jury imposed the sentence is meaningless. Certainly, the court could have instructed the jury that the only sentence available was a life sentence pursuant to the statute, and then dismissed the jury to "deliberate," but the outcome would have been the same. There could not be a violation of the defendant's due process and equal protection rights where the same sentence would have been handed down whether the court or the jury made the ruling.

██ Sentencing in Arkansas is entirely a matter of statute. *State v. Freeman*, 312 Ark. 34, 846 S.W.2d 660 (1993). The *Freeman* court quoted previous cases, stating, "It is well settled that it is for the legislative branch of a state or federal government to determine the kind of conduct that constitutes a crime and the nature and extent of punishment which may be imposed." *Freeman*, 312 Ark. at 37 (citing *Southern v. State*, 284 Ark. 572, 683 S.W.2d 933 (1985), quoting *Sparrow v. State*, 284 Ark. 396, 683 S.W.2d 218 (1985)). This court has also held that minimum sentences for habitual offenders are mandatory, *McKillion v. State*, 306 Ark. 511, 815 S.W.2d 936 (1991), and that there is no constitutional right to be sentenced by a jury. *Ricks, supra.* As such, whether the trial court or the jury sentenced him to a mandatory life term seems to be a distinction with no effect.

██ Regardless, this court must analyze the statutes using a rational-basis review because the defendant is not in a protected class. Under this analysis, this court must find that the legislature had a rational basis for enacting a heightened punishment scheme such as that in Ark. Code Ann. § 5-4-501(d)(1). *See Chapman v. United States*, 500 U.S. 453 (1991). As other cases have shown, such "three-strike" provisions currently are constitutional in other states and the federal courts. *See Harmelin v. Michigan*, 501 U.S. 957 (1991); *State v. Jones*, 543 S.E.2d 541 (2001); *State v. Block*, 587 N.W.2d 914 (Wis. 1998); *State v. Thorne*, 921 P.2d 514 (Wash. 1996); *State v. Manussier*, 921 P.2d 473 (Wash. 1996). The rational basis most commonly offered by these courts is that the legislature has an interest in protecting the public by requiring heightened punishment for repeat offenders, particularly violent offenders such

as Bunch. *See Block, supra;, Thorne, supra;* and *Manussier, supra.* Therefore, because it appears that there is a rational basis for enacting the enhancement provision in Ark. Code Ann. § 5-4-501(d), any perceived "conflict" between that statute and any statute allowing the jury to sentence to the same punishment does not create a constitutional violation.

### B. Does Ark. Code Ann. § 5-4-501(d)(3) violate the federal and state constitutional prohibition against cruel and unusual punishment?

■ Next, Bunch argues that applying a life sentence for this crime constitutes cruel and unusual punishment under the Eighth Amendment to the United States Constitution and Article 2, § 9, of the Arkansas Constitution. Bunch offers absolutely no authority in support of this argument, and this court has repeatedly said that arguments unsupported by authority or convincing argument will not be considered by this court. *Womack v. Foster,* 340 Ark. 124, 8 S.W.3d 854 (2000). This court has said on numerous occasions that it will not consider the merits of an argument if the appellant fails to cite any convincing legal authority in support of that argument. *Ellis v. Price,* 337 Ark. 542, 990 S.W.2d 543 (1999); *Craft v. City of Fort Smith,* 335 Ark. 417, 984 S.W.2d 22 (1998); *Ayers v. State,* 334 Ark. 258, 975 S.W.2d 88 (1998); *Williams v. State,* 329 Ark. 8, 946 S.W.2d 678 (1997). Bunch's failure to cite authority or make a convincing argument is sufficient reason for affirmance of the trial court's ruling on this point. *Williams v. Martin,* 335 Ark. 163, 980 S.W.2d 248 (1998). It is certainly not apparent without further research that this argument is well-taken. *Id.*

■ Despite this lack of authority or argument, we choose to reach the merits. It should first be noted that this court has interpreted the provisions in both the state and federal constitutions identically on the issue of the prohibition against cruel and unusual punishment, and this case does not offer any legal authority or persuasive argument to change our legal course now. *See, e.g., Williams v. State,* 325 Ark. 432, 930 S.W.2d 297 (1996); *Allen v. State,* 253 Ark. 732, 488 S.W.2d 712 (1973). Because of that, the United States Supreme Court's decision in *Harmelin,* holding that a mandatory life sentence does not violate the Eighth Amendment prohibition against cruel and unusual punishment, appears to be dispositive. Furthermore, the sentence falls within the limits set by the General Assembly for the offense. *Henderson v. State,* 322 Ark. 402, 910 S.W.2d 656 (1995). As such, this court has held that if the sentence fixed by the trial court is within legislative limits, we are

not free to reduce it even though we might consider it to be unduly harsh. *Williams v. State*, 320 Ark. 498, 898 S.W.2d 38 (1995); *Parker v. State*, 302 Ark. 509, 790 S.W.2d 894 (1990). We have carved out extremely narrow exceptions to this general statement of the law: (1) where the punishment resulted from passion or prejudice; (2) where it was a clear abuse of the jury's discretion; or (3) where it was so wholly disproportionate to the nature of the offense as to shock the moral sense of the community. *See Williams, supra; Dunlap v. State*, 303 Ark. 222, 795 S.W.2d 920 (1990); *Parker, supra; see also, Harmelin, supra.* None of these three narrow exceptions applies here where the punishment is mandated by the legislature and has been determined by the Supreme Court in *Harmelin* as not violative of the Eighth Amendment. Other jurisdictions, as well, have come to the same conclusion, particularly in relation to their "three strikes" legislation. *See Jones, supra; Block, supra; Thorne, supra; and Manussier, supra.* We do not think Bunch's argument has merit based on the current state of the law.

### C. Does Ark. Code Ann. § 5-4-501(d)(3) Violate the Separation of Powers Doctrine?

As his final argument, Bunch argues that the legislature's enactment of a mandatory sentence violates the Separation of Powers Doctrine in the federal and state constitutions or constitutes a bill of attainder because it legislatively determines a mandatory sentence without a trial before a jury or judge.

Once again, Bunch failed to offer any legal authority in support for this proposition and, as such, this court may refuse to consider the argument. *See Womack, supra.* Again, however, we choose to reach the merits. This argument necessarily ties in with the first point on appeal. Since the enactment of the criminal code, this court has said that sentencing is controlled by statute. *See Spann v. State*, 328 Ark. 509, 944 S.W.2d 537 (1997), and *Cody v. State*, 326 Ark. 85, 929 S.W.2d 159 (1996). In *State v. Murphy*, 315 Ark. 68, 864 S.W.2d 842 (1993), this court considered whether the trial court's refusal to sentence the defendant as an habitual offender despite the statutory requirement to do so violated the Separation of Powers Doctrine. The court stated:

> In refusing to sentence appellee as an habitual offender, the trial court stated that the word "may" in the recidivist statute indicated that sentencing an accused pursuant to that statute is discretionary with the trial court. The trial court relied on *Mathis v. State*, 267 Ark. 904, 591 S.W.2d 679 (Ark. Ct. App. 1979). The

trial court's reliance was misplaced. In *Mathis*, the court of appeals incorrectly indicated that sentencing an accused as an habitual was a matter within the trial court's discretion. Realizing its error, the court of appeals overruled *Mathis* in *Rogers v. State*, 10 Ark. App. 19, 660 S.W.2d 949 (1983).

> This court has very clearly stated on several occasions that sentencing under the recidivist statute is mandatory, not optional. *State v. Freeman*, 312 Ark. 34, 846 S.W.2d 660 (1993); *McKillion v. State*, 306 Ark. 511, 815 S.W.2d 936 (1991); *Woodson v. State*, 302 Ark. 10, 786 S.W.2d 120 (1990); *Hart v. State*, 301 Ark. 200, 783 S.W.2d 40 (1990). This court has reasoned that the word "may" in the recidivist statute indicates that the jury or the trial court, whichever is considering the sentence to be imposed, has only the discretion to sentence an accused within the range of punishment set out in the recidivist statute. *See e.g., McKillion*, 306 Ark. 511, 815 S.W.2d 936. We have consistently maintained our position on this issue and do so again today.

*Murphy*, 315 Ark. at 73. Based on this reasoning, in this case a violation of the Separation of Powers Doctrine could only have occurred here if the trial court had *not* sentenced Bunch to life in prison as required by the habitual offender statute. Because sentencing is controlled by statute, and, thus, by the legislature, the legislature's requirement of a life sentence for an habitual violent offender is mandatory and not within the trial court's or jury's discretion.

██ ██ Furthermore, this court discussed bills of attainder in *Burns v. State*, 303 Ark. 64, 793 S.W.2d 779 (1990), and stated:

> In *Nixon v. Administrator of General Services*, 433 U.S. 425 (1977) (citing *United States v. Brown*, 381 U.S. 437 (1965)), the Supreme Court discussed the key features of a bill of attainder and stated that it was ". . . a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." Bills of attainder are proscribed by Art. I, 10 of the United States Constitution, which provides that "[n]o State shall . . . pass any Bill of Attainder, ex post facto Law . . . ."

*Burns*, 303 Ark. at 68. Clearly, as the State points out in its brief, Bunch cannot show that he was determined guilty and sentenced to a previously fixed punishment without a trial, or that he was a targeted "identifiable individual" not afforded the protections of a judicial trial.

*Arkansas Supreme Court Rule 4-3(h)*

The transcript of the record in this case has been reviewed in accordance with our Rule 4-3(h), which requires, in cases in which there is a sentence to life imprisonment or death, that we review all prejudicial errors in accordance with Ark. Code Ann. § 16-91-113(a). None have been found.

Affirmed.