Ms. Linda Longstreth, Executive Director Arkansas Professional Bail Bondsman Licensing Board 101 East Capitol, Suite 117 Little Rock, AR 72201
Dear Ms. Longstreth:
I am writing in response to your request for an opinion concerning the residency requirement under A.C.A. 17-19-101 (6), which defines a "professional bail bondsman" as "an individual who is a resident of thisstate and who acts through authority of a professional bail bond company in pledging a bail bond as security in a judicial proceeding." (Emphasis added). You have requested an opinion as to the constitutionality of this provision.
RESPONSE
It is my opinion that this residency requirement is constitutional.
Although a residency requirement that deprives nonresidents of a "protected privilege" can be constitutionally suspect under the "Privileges and Immunities Clause"[1] (see New Hampshire v. Piper,470 U.S. 274 (1985) and cases cited therein), it is my opinion that the bail bond business does not implicate a constitutionally protected "fundamental right" or "privilege." See, e.g., Piper, supra and Baldwinv. Montana Fish Game Comm'n, 436 U.S. 371 (1978). I believe this is evident from cases in other jurisdictions that have upheld statutes which explicitly or effectively abolished the commercial bail bonding business. These cases are collected and analyzed at 19 A.L.R.4th 355 (1983 and Supp. 2004). As noted in the annotation, these statutes, enacted in response to criticism leveled at the commercial bail bonding business, have been upheld as constitutional and within the police power of the state. The following discussion of a Kentucky case is illustrative:
 [T]he court in Stephens v. Bonding Assoc. of Kentucky (1976, Ky) 538 S.W.2d 580, held that the abolition of commercial bail bonding was within the police power of the state and did not violate the Fourteenth Amendment of the Federal Constitution or parallel provisions of the state constitution. Rejecting the bonding company's contention that the abolition of the bail bond business constituted the taking of property without due process of law, the court held that under the proper exercise of the police power, there was no violation of constitutional right even though commercial interests might be adversely affected. It was said that commercial activities having potential evil consequences, although not harmful or offensive per se, could be regulated or prohibited altogether under the police power.
The court pointed out that bail bonding did not enjoy a favored status as a vital part of the judicial system, but was instead a business whose evils had been tolerated for lack of a better way to ameliorate the confinement of persons entitled to a presumption of innocence pending trial. As the commercial bail bonding business did not have protected status as an integral part of the judicial process which would require the court to invalidate the reforms effected by the legislature in an effort to remedy the evils of the pre-existing system, the court found that the legislature had acted in the rational exercise of the police power.
19 A.L.R.4th 355 (emphasis added). See also Schilb v. Kuebel,404 U.S. 357, reh. den. 405 U.S. 948 (1971) (upholding an Illinois statute that effectively eliminated the prior existing bail bondsman system by substituting an alternative, less expensive, cash deposit plan).
It is obvious that the courts in these cases did not view the bail bond business as a right or privilege to be afforded constitutional protection. The courts found a reasonable basis for the statutes in the perceived "potential for abuse and corruption." Kahn v. McCormack,99 Wis.2d 382, 299 N.W.2d 279 (1980).
The rationale articulated in these cases leads me to conclude that if faced with the question, an Arkansas court would conclude that the residency requirement under our bail bondsman licensing statute does not deprive nonresidents of a protected privilege. Although there is no Arkansas case directly on point, Rodgers v. Southland Racing Corp.,247 Ark. 1115, 450 S.W.2d 3 (1970) reflects, in my opinion, the court's likely approach to the issue. That case involved a challenge to the statute (A.C.A. § 23-111-406 (Repl. 1999)) that requires officers and directors of the greyhound dog tracks to be residents of the county and state. The statute was challenged under privileges and immunities, due process, equal protection, and interstate commerce. In rejecting these claims, the court first noted:
 The operation of a dog track, with legalized gambling, is unquestionably a privilege which the State might prohibit altogether if it chose to do so. . . . That being true, the State may impose conditions upon the exercise of the privilege beyond those that might be imposed upon the enjoyment of matters of common right.
247 Ark. at 1117.
The court then looked to statutes restricting the issuance of liquor licenses to local residents, noting that such statutes have been upheld as a permissible exercise of the police power under the theory that:
 the residence requirement enables the licensing authority to determine in the first instance whether the applicant is of good moral character and to maintain thereafter the necessary surveillance over the conduct of a business that must be closely regulated in the interest of the public peace, health, and safety.
Id. at 1118.
The court concluded that the residency requirement was a lawful condition upon the operation of a race track, particularly considering "the broad power that the state has over such enterprises, extending even to the point of total prohibition." Id.
It is my opinion that the court similarly would uphold the bail bondsman residency requirement as a valid exercise of the police power based on these considerations. It is a well-established principle of statutory construction that statutes are presumed constitutional and the burden of proving otherwise is on the challenger. See generally Bunch v. State,344 Ark. 730, 43 S.W.3d 132 (2001). If it is possible to construe a statute as constitutional, the court will do so. Jones v. State, 333 Ark. 208,969 S.W.2d 618 (1998); Stone v. State, 254 Ark. 1022, 498 S.W.2d 634
(1973). In my opinion, a court would have no difficulty finding the residency requirement under the bail bondsman licensing statutes to be a constitutional exercise of the State's broad power over the commercial bail bonding business.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:EAW/cyh
[1] The Privileges and Immunities Clause contained in U.S. Const. art. IV, § 2 provides: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the Several States."