The Honorable Phillip T. Jacobs State Representative 819 North Miller Street Clarksville, Arkansas 72830-2239
Dear Representative Jacobs:
I am writing in response to your request for an opinion asking that I "please advise [you] of Arkansas law concerning exit polls." You state that you have been informed that a New Jersey firm plans to do an "exit poll" in one of the polling places in Johnson County.
RESPONSE
There is no Arkansas law that specifically addresses the subject of "exit polls." This phrase is not mentioned anywhere in the Arkansas Code and I have found no reported Arkansas judicial decisions discussing the practice.
In 1999, my predecessor issued an opinion concerning the distance limitations applicable to persons conducting exit polls. In Op. Att'y Gen. 99-330, it was concluded that A.C.A. § 7-5-309(a)(4) was the only statutory subsection imposing an across-the-board limitation in this regard. That subsection provides as follows:
 (a)(1) At general, primary, special, and school elections in counties which use paper ballots, the county board of election commissioners shall provide in each polling site at least one (1) voting booth for each fifty (50) registered electors in the last-preceding comparable election.
 (a)(2) Each voting booth shall be situated so as to permit voters to prepare their ballot screened from observation and shall be furnished with any supplies and conveniences as will enable the voter to prepare his ballot.
 (a)(3) The voting booths shall be situated in the polling site in plain view of election officials.
 (a)(4) No person other than the election officials and those admitted for the purpose of voting shall be permitted within the immediate voting area, which shall be considered as within six feet (6') of the voting booths, except by authority of the election officials and then only when necessary to keep order and enforce the law.
(Emphasis added).
Subsection (a)(1) above clearly applies to counties utilizing paper ballots. It is somewhat unclear whether the remainder of subsection (a), including the six-foot limitation found in subsection (a)(4), is similarly restricted to counties using paper ballots. In any event, the other two types of voting in Arkansas are "voting machines," and "electronic voting systems." Each of the subchapters governing these methods of voting have a provision adopting laws set out to govern other types of voting methods, insofar as applicable or not inconsistent with the subchapter. See A.C.A. § 7-5-502 and § 7-5-604(b). In my opinion, therefore, the six-foot limitation contained in A.C.A. § 7-5-309(a)(4) also applies in counties using voting machines and electronic voting systems.
It should be noted additionally that A.C.A. § 7-5-521, applicable to counties using voting machines, states that "after the opening of the polls, the election officials shall not allow any person to pass to the part of the room where the machine is situated, except for the purpose of voting." As my predecessor noted, "[t]his limitation may, or may not, depending upon the voting room, be more restrictive than the six-foot limitation set out in A.C.A. § 7-5-309 (a)(4)." Id. at 4.
My predecessor also addressed the potential applicability of A.C.A. §7-1-103(a)(9)(A) (Supp 2003), which provides as follows:
 (9)(A) No election official acting in his official capacity shall do any electioneering on any election day or any day on which early voting is allowed. Except as provided in subdivisions (B) and (C) of this subdivision (a)(9), no person shall hand out or distribute or offer to hand out or distribute any campaign literature or any literature regarding any candidate or issue on the ballot, solicit signatures on any petition, solicit contributions for any charitable or other purpose, or do any electioneering of any kind whatsoever in the building or within one hundred feet (100') of the primary exterior entrance used by voters to the building containing the polling place on election day.
My predecessor concluded and I agree, that this subsection has no applicability to exit polling activities. Exit polling does not involve the distribution of "campaign literature," or the solicitation of signatures or contributions for charitable or other purposes. In addition, in my opinion the conduct of exit polling cannot reasonably be categorized as "electioneering." As stated in Op. Att'y Gen. 99-330:
 "Electioneer" has been defined as meaning "to take an active part in an election; to work for the election of a candidate or party." Webster's Seventh New Collegiate Dictionary (7th Ed. 1972 at 266). See also, Op. Att'y Gen. 93-306. In addition, in Op. Att'y Gen. 78-077, it is stated that the term "electioneering" "refers to espousing the cause of a candidate or issue on the day of election." It has been stated by at least some officials that the term "electioneering" does not include exit polling activities. See, e.g., Kentucky Op. Att'y Gen. 92-73 ("[w]e do not read the exclusion of exit polling to abridge the scope of electioneering, since exit polling occurs after a voter has cast his ballot and could not in any sense be deemed an effort to influence the voter's decision").
Id. at 2.
In my opinion, therefore, the one-hundred foot limitation of A.C.A. §7-1-103(a)(9)A) does not apply to exit polling activities.
A separate subsection of A.C.A. § 7-1-103(a)(22) (Supp. 2003) is also worth mentioning. It provides as follows:
 (22) No election official, poll watcher, or any other person in or out of this state in any primary, general, or special election in this state shall divulge to any person the results of any votes cast for any candidate or on any issue in the election until after the closing of the polls on the day of the election. The provisions of this subdivision (22) shall not apply to any township or precinct in this state in which all of the registered voters therein have voted prior to the closing of the polls in those instances where there are fifteen (15) or fewer registered voters in the precinct or township[.]
This subsection prohibits election officials and poll watchers from divulging the "results of any votes cast" at the election prior to the closing of the polls. The statute also prohibits, however, "any other person in or out of this state" from divulging such results prior to the closing of the polls. Read broadly, this statute would flatly prohibit exit polling. In my opinion the statute would not be construed in this manner.
First, the statute prohibits divulging the "results of any votes cast." In my opinion this language refers to the official "results" of votes cast with election officials and not to the incidental, voluntary sharing of an individual's own vote with an exit pollster. If the subsection were read broadly in this fashion, as prohibiting any person from divulging how he voted in the election, it would also prohibit, for example, a husband from telling his wife, son or daughter how he voted prior to closing of the polls. This is not a supportable construction of the subsection.
Second, statutes will be construed if possible, as constitutional. Seegenerally Bunch v. State, 344 Ark. 730, 43 S.W.3d 132 (2001). If it is possible to construe a statute as constitutional, the court will do so.See Jones v. State, 333 Ark. 208, 969 S.W.2d 618 (1998) and Stone v.State, 254 Ark. 1022, 498 S.W.2d 634 (1973). Exit polling is an activity protected by the First Amendment. See e.g., The Daily Herald Company v.Munro, 838 F.2d 380 (9th Cir. 1988) (stating that "[t]he media plaintiffs' exit polling constitutes speech protected by the First Amendment, not only in that the information disseminated based on the polls is speech, but also in that the process of obtaining the information requires a discussion between pollster and voter"). Although First Amendment activity in and around the polls is subject to regulation by the State, a flat prohibition against such conduct would in my opinion not survive judicial scrutiny. See, e.g., Burson v. Freeman, 504 U.S. 191
(1992).[1] In my opinion, therefore, A.C.A. § 7-1-103(a)(22) does not have the effect of flatly prohibiting exit polling activities.
As stated above, no Arkansas statute or case law expressly addresses exit polling. The applicable limitations on the practice are contained in A.C.A. § 7-5-309(a)(4) (the six-foot limitation) and in A.C.A. § 7-5-521
(applicable to counties using "voting machines").
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh
[1] In Burson, the Court upheld Tennessee's one-hundred foot limitation on campaign activity in and around polling places. The Court rejected an argument, however, that the statute was unconstitutionally "underinclusive" because it did not prohibit exit polling activities. The Court distinguished the latter practice by stating: "there is . . . ample evidence that political candidates have used campaign workers to commit voter intimidation or electoral fraud. In contrast, there is simply no evidence that political candidates have used other forms of solicitation or exit polling to commit such electoral abuses." Id. at 207.