The Honorable David Dunn State Representative Post Office Box 208 Forrest City, Arkansas 72336-0208
Dear Representative Dunn:
I am writing in response to your request for an opinion on the following two questions:
 1. If a municipality is already levying a two percent local sales tax (one percent for general funds and one percent for bonds) can it then levy an additional tax for economic development under the terms of ED Sales Tax Legislation?
 2. In addition, if a city has an advertising and promotion tax, can the proceeds be used for economic development activities such as director's salary, marketing, and/or office equipment?
RESPONSE
In response to your first question, you have not indicated under which statutory subchapters the taxes in question are levied. I cannot engage in an analysis of the legality of the action you describe without reference to all the specific facts. I will note, however, that if by reference to the "ED Sales Tax Legislation," you are referring to A.C.A. §§ 14-174-101 to -109 (Repl. 1998 and Supp. 2005), in my opinion, although this issue is not entirely clear, this legislation does not stand as separate authority to levy a sales and use tax. That subchapter, rather, in section 14-174-104, authorizes a municipality to levy a sales or use tax pursuant to any other currently existing statutory authority and to then provide that the proceeds may be used as described in A.C.A. §§ 14-174-101 to -109. To the extent that a municipality has exhausted its other statutory authority to levy a sales tax, A.C.A. §§ 14-174-101 to -109 may not be invoked as separate authority to levy an additional tax. The question of whether a municipality has exhausted its authority to levy an additional sales tax is one upon which I cannot opine in the absence of specific facts. In response to your second question, I have enclosed a copy of Op. Att'y. Gen. 2003-272, which should answer the question posed in this regard.
Question 1 — If a municipality is already levying a two percentlocal sales tax (one percent for general funds and one percentfor bonds) can it then levy an additional tax for economicdevelopment under the terms of ED Sales Tax Legislation?
I cannot render an opinion on this issue without detailed reference to the exact sales tax levies at issue. Several different subchapters of the Arkansas Code address the levy of municipal sales taxes and might be implicated in the context of your first question. See e.g., A.C.A. §§ 26-75-201 to -223 (Repl. 1997 and Supp. 2005) (sales and use tax for capital improvements); A.C.A. §§ 26-75-301 to -319 (Repl. 1997 and Supp. 2005) (sales tax for capital improvements); A.C.A. §§ 26-75-401
to -411 (Repl. 1997 and Supp. 2005) (temporary tax for acquisition, construction, or improvement of parks); A.C.A. §§26-75-501 to -508 (Repl. 1997 and Supp. 2005) (gross receipts tax by cities of certain population); A.C.A. §§ 14-164-301 to -340 (Repl. 1998 and Supp. 2005) ("Local Government Bond Act of 1985); and A.C.A. § 26-73-113 (Alternative local sales and use tax). Reference to all the facts surrounding the levy of the taxes in question would be necessary to determine the municipality's authority to impose an additional tax. I am not empowered as a factfinder in the issuance of official Attorney General opinions and as a consequence, cannot determine the issue in a given instance. I can engage in a general discussion of the law in this area, which the city in question may wish to share and discuss with its legal counsel.
I assume, as an initial matter, that in referring to a one percent tax for "general funds," you may be referencing a sales tax levied under the authority of A.C.A. § 26-75-201 to -223 (Repl. 1997 and Supp. 2005), which was originally adopted as Acts 1981 (Ex. Sess.), No. 25. It has been stated that: "[t]he emergency clause of the act provided that the tax was for city "services." This tax was referred to as the cities' "operating penny" tax since it could be "used by the city for any purpose for which the city's general funds may be used." See Hasha v.City of Fayetteville, 311 Ark. 460, 462-463, 845 S.W.2d 500
(1993), citing what is now A.C.A. § 26-75-217(a).[1] It is also possible, however, that you are referring to a tax levied under A.C.A. § 26-75-301 (see A.C.A. § 26-75-301(c)(2) (Supp. 2005) (authorizing use of this tax for "payment of bonds, or for any purpose for which the municipality's general fund may be used or for a combination thereof"); or to A.C.A. § 26-73-113, the proceeds of which may be used for several different purposes, including to "[f]inance the operation, maintenance and/or rental expense of capital improvements, or a solid waste management system or part thereof . . . or both"). See A.C.A. §26-73-113(a)(2)(A) (Repl. 1997). See also, A.C.A. §§ 26-73-110
and -112 (authorizing the levy of up to a .25% sales and use tax in addition to all other sales and use taxes, which may be used for public mass transportation systems and facilities).
In referring to a one percent sales tax "for bonds," you may be referring either to a tax levied under A.C.A. §§ 26-75-201 to -223 (Repl. 1997 and Supp. 2005) (see fn 1, supra); A.C.A. §§26-75-301 to -319 (Repl. 1997 and Supp. 2005); or to a tax levied under A.C.A. §§ 14-164-301 to -340 (Repl. 1998 and Supp. 2005). The first statute has been addressed above and in footnote 1. The second statute, originally adopted by virtue of Act 990 of 1975, has been called the "basic statute authorizing the levy of a municipal sales tax. . . ." Hall v. Ragland, Commissioner ofRevenues, 276 Ark. 350, 351, 635 S.W.2d 228 (1982). Its purpose is to authorize the acquiring, constructing, and equipping of capital improvements of a public nature. A.C.A. § 26-75-301(a). It authorizes the issuance of bonds for such purposes. A.C.A. §26-75-304. It was amended in 2001, however, as noted above, to also allow the use of the taxes levied under it "for any purpose for which the municipality's general fund may be used. . . ." A.C.A. § 26-75-301(c)(2) (Supp. 2005). Sections 14-164-301—340 are described as "implementing Amendment 62" and "authorize a municipality to adopt a new one cent `bond penny' local sales and use tax to retire capital improvement bonds." Hasha, supra at 463, citing 14-164-327. That subchapter also provides that "a city, after approval by the voters, can pledge all or a portion of a pre-existing sales tax to retire capital improvement bonds."Id. at 464, citing A.C.A. § 14-164-337(c)(1). The court inHasha also noted that this legislation (specifically A.C.A. §14-164-338), was amended in 1988 "to provide that a city, as an alternative to issuing capital improvement bonds, can construct pay-as-you-go capital improvements by levying a `bond penny' for up to twelve months when that penny, over a twelve-month period, will be sufficient to construct the improvement." In addition, it is possible your question refers to a tax levied under A.C.A. §26-73-113 (authorizing the use of this tax to "secure the repayment of bonds . . . issued under §§ 14-164-301 — 14-164-339").
I am not certain which of these subchapters, or perhaps two additional subchapters (A.C.A. §§ 26-75-401 to -411 (temporary tax for acquisition, construction, or improvement of parks); or A.C.A. §§ 26-75-501 to -508 (gross receipts tax by cities of certain population)), are implicated in the situation you present. Reference to all the pertinent facts would be necessary to determine the extent of a city's authority to levy a sales and use tax. Again, this office is not empowered as a factfinder in the issuance of official Attorney General opinions. Consultation with the affected city's city attorney, other appointed legal counsel, or bond counsel is advisable in this regard.
Although you have not indicated as much, I assume that the "additional tax for economic development under the terms of ED Sales Tax Legislation" mentioned in your question, refers to the tax authorized at A.C.A. §§ 14-174-101 to -109 (Repl. 1998 and Supp. 2005). Although I cannot opine definitively in response to your first question in the absence of surrounding facts, I can engage in a discussion of the nature and proper construction of this subchapter, which I hope will be useful in response to your question.
The subchapter about which you inquire was originally adopted in 1993. See Acts 1993, No. 1012 and Acts 1993, No. 1069. The purpose of the law is summarized at A.C.A. § 14-174-101 as follows:
 The purpose of this subchapter is to provide cities and counties with the authority to levy taxes to raise revenue for funding economic development projects to stimulate the local economy and to support private sector job creation opportunities. No funds generated by any tax levied pursuant to this subchapter shall be used as general operating revenue, but shall be expended for the purposes prescribed by §§ 14-174-105—14-174-107 or § 14-174-109.
A.C.A. § 14-174-101 (Supp. 2005).
With regard to the levy of the tax authorized by this subchapter, two provisions of the Act are relevant and they provide in pertinent part as follows:
14-174-103. Levy of new taxes permitted.
 (a)(1)(A) In addition to all other authority of local governments to levy taxes provided by law, any county, acting through its quorum court, or any municipality, acting through its governing body, may levy any tax.
 (B)(i) However, no ordinance levying any tax authorized by this subchapter shall be valid until adopted at a special or general election by qualified electors of the city or in the county where the tax is to be imposed, as the case may be.
 (ii) An election will also be required to increase, decrease, or repeal a tax levied pursuant to this subchapter.
* * *
 (d) The local government levying the tax shall collect and administer the tax.
* * *
 14-174-104. Levy of sales and use taxes currently authorized.
 (a) The local government may levy a sales or use tax pursuant to any other currently existing statutory authority to levy the tax and provide that the proceeds generated by the tax are to be used for any purpose authorized by this subchapter.
 (b) The Department of Finance and Administration will administer and collect any sales or use tax levied under this section if the Department of Finance and Administration would have administered and collected the tax had the tax been levied solely pursuant to the primary statutory authority to levy the tax. The primary statutory authority to levy the tax is the statute upon which the local government relied for levying the tax, not this subchapter.
Id. (Emphasis added).
A question arises as to whether A.C.A. § 14-174-103, authorizing a city to levy "any tax," includes the levy of new sales and use taxes and thus stands as separate authority to levy such taxes, or whether A.C.A. § 14-174-104, which authorizes the levy of sales and use taxes pursuant to separate, existing statutory authority, is the only provision of this subchapter that applies to sales and use taxes. If the former is true, the city to which you refer could use A.C.A. § 14-174-101 to -109 as separate authority to levy a sales and use tax, irrespective of any other sales and use taxes it has already levied under other subchapters. If the latter is true, the city must look to other statutory subchapters for authority to levy the tax, and if that authority is already exhausted,[2] may not rely upon A.C.A. § 14-174-101 to -109 for separate authority to levy a sales tax and use tax.
In my opinion A.C.A. §§ 14-174-101 to -109 is not entirely clear in this regard. On the one hand, § 14-174-103 broadly declares that "in addition to all other authority" a municipality may levy "any tax." Id. at (a)(1)(A). This is true assuming a favorable vote at an election on the question. Id. at (a)(1)(B). This section states that the "local government levying the tax shall collect and administer the tax." Id. at (d). On the other hand, A.C.A. § 14-174-104 more specifically addresses the levy of sales and use taxes. It authorizes the levy of such taxes "pursuant to any other currently existing statutory authority" and provides that the proceeds may be used for the purposes set out in A.C.A. §§ 14-174-101 to -109. Under this section, the Department of Finance and Administration collects and administers the tax, if it would have administered and collected the tax under the other authorizing law.
Although the issue is not clear and could benefit from legislative clarification, it is my opinion that A.C.A. §14-174-103 does not, standing alone, authorize the levy of municipal sales and use taxes. In this regard the reference to "any tax" in A.C.A. § 14-174-103(a)(1)(A) should in my opinion be interpreted as excluding sales and use taxes, which are addressed instead in A.C.A. § 14-174-104. As a result, in my opinion a city wishing to impose such a tax must rely on a statutory subchapter outside A.C.A. §§ 14-174-101 to -109 for authority to levy such a tax. Several considerations lead me to reach this conclusion.
First, it is generally held that a specific provision in an act governs over a more general provision. In this regard, the Arkansas Supreme Court has stated as follows:
 It is well settled that where there is, in the same statute, a particular, and also a general enactment, the latter including what is embraced in the former, the particular enactment is operative, and the general enactment must be taken to effect only that which, within its general language, is not within the provisions of the particular enactment. Hodges v. Dawdy, 104 Ark. 583, Page 856 149 S.W. 656; U.S. v. Chase, 135 U.S. 255; 25 R.C.L., 1010 and 1011.
Wiseman v. Arkansas Utilities Company, 191 Ark. 854, 855,88 S.W.2d 81 (1935).
This rule of statutory construction supports the conclusion that the general reference to "any tax" in A.C.A. §14-174-103(a)(1)(A) does not include sales and use taxes, which are more specifically addressed by A.C.A. § 14-174-104.
Second, it is generally held that "in construing a statute, [the Arkansas Supreme Court] will assume that the General Assembly, in enacting it, possessed the full knowledge of prior legislation on the same subject. . . ." Otis v. State, 355 Ark. 590, 614,142 S.W.3d 615 (2004), citing Bunch v. State, 344 Ark. 730,43 S.W.3d 132 (2001). In this regard, reference should be had to a separate statute, A.C.A. § 26-73-103, of which the General Assembly was evidently aware when adopting the subchapter in question. Section 26-73-103 was originally adopted in 1977 and it provides in pertinent part that:
 (a) In addition to all other authority of local governments to levy taxes provided by law, any county, acting through its quorum court, or any municipality, acting through its governing body, may levy any tax not otherwise prohibited by law. However, no ordinance levying an income tax authorized by this subchapter or any other tax not authorized shall be valid until adopted at a special or general election by the qualified electors of the city or in the area of the county where the tax is to be imposed, as the case may be.
 (b) A local government shall not levy a tax on fuel, tobacco, or alcoholic beverages except as authorized by law.
 * * * (g) Until otherwise authorized by the General Assembly, cities and counties shall have no authority to levy any new sales or use taxes after April 1, 1977.
Id. (Emphasis added).
The language of A.C.A. § 14-174-103(a)(1)(A) and (b)(i), supra,
bears a striking similarity to the language of subsection (a) above. Obviously, therefore, the General Assembly was aware of A.C.A. § 26-73-103 in adopting A.C.A. § 14-174-103 and -104. Other related rules of statutory construction provide that 1) in construing any statute, courts will place it beside other statutes relevant to the subject matter in question and ascribe meaning and effect to be derived from the whole; (State v.Sola, 354 Ark. 76, 118 S.W.3d 95 (2003)); 2) statutes relating to the same subject are in "pari materia" and should be read in a harmonious manner, if possible; (Monday v. Canal InsuranceCompany, 348 Ark. 435, 73 S.W.3d 594 (2002)); and 3) new legislation must be construed with reference to existing legislation on the same subject. Newton County RepublicanCentral Committee v. Clark, 228 Ark. 965, 311 S.W.2d 774 (1958) and McIntosh v. City of Little Rock, 159 Ark. 607, 252 S.W. 605
(1923).
In this regard, the provisions of A.C.A. § 26-73-103 authorize the levy, by a municipality, of "any tax," assuming a favorable result at an election, but deny municipalities the authority to levy any new sales and use taxes unless authorized by the General Assembly. In a similar fashion, A.C.A. § 14-174-103 authorizes the levy of "any tax," assuming a favorable vote at an election, but then specifically addresses sales and use taxes by authorizing their levy under separate, existing, statutory authority, which might then be used to direct the proceeds to the purposes enumerated in A.C.A. §§ 14-174-101 to -109. Although it might be argued that A.C.A. § 14-174-103 is the type of "authorization" contemplated by A.C.A. 26-73-103(g) for a city to levy a new sales and use tax after April, 1, 1977, in my opinion the broad, general language of A.C.A. § 14-174-103, which does not even specifically reference sales and use taxes, cannot be read as such authorization. In my opinion, § 26-73-103(g) contemplates a more specific grant of authorization than that arguably afforded under A.C.A. § 14-174-103(a)(1)(A).
Third, practical considerations and the adoption of a later provision in the economic development subchapter support this conclusion. If A.C.A. § 14-174-103 is viewed, standing alone, as authorization to levy a sales and use tax, questions would arise as to the authorized amount, the items or sales upon which the tax is chargeable, as well as its collection and administration. In the past, when the General Assembly has authorized the imposition of a local sales and use tax, it has been rather explicit in detailing these matters. See e.g., A.C.A. §§26-74-201 to § 26-75-801. In addition, local sales and use taxes, with limited exceptions, are collected and administered by the Department of Finance and Administration. See A.C.A. §§14-164-333; 26-74-214; 26-74-312; 26-74-409; 26-74-609;26-75-214; 26-75-313; 26-75-407; 26-75-505; and 26-81-107. Butsee, A.C.A. §§ 26-74-503 and 26-75-603 ("hamburger taxes"). Section 14-174-103(d), if construed to authorize the levy of a sales and use tax, provides for the collection and administration of the tax by the local government. I cannot conclude that the general reference in A.C.A. § 14-174-103 to the levy of "any tax," authorizes a municipality to impose and collect a sales and use tax without detailing any criteria upon which to administer and collect the tax.
This conclusion is supported by the adoption of a later statute in the same subchapter, which contemplates that sales and use taxes imposed for the purposes set out in A.C.A. §§ 14-174-101 to -109 will be collected by the Department of Finance and Administration. Section 14-174-109 of the relevant subchapter was added by Acts 2005, No. 1372. The relevant provisions of this statute provide as follows:
 (a) The sales and use taxes levied or authorized under this subchapter may be used for the sole use and benefit of a corporation organized under the Public Corporations for Economic Development Act, § 14-175-101 et seq.
 (b) On receipt from the Director of the Department of Finance and Administration of the net proceeds of the sales and use tax levied or authorized under this subchapter, the local government shall deliver all of the proceeds to the corporation to use in carrying out its functions.
Id. (Emphasis added).
In accordance with A.C.A. § 14-174-104, the assumption of this provision is that the Department of Finance and Administration will be collecting any sales and use taxes levied pursuant to A.C.A. §§ 14-174-101 to -109. This provision does not admit of the possibility that a local government would be collecting a sales and use tax under A.C.A. § 14-174-103(d).
For the foregoing reasons, it is my opinion that A.C.A. §14-174-103, standing alone, does not authorize the imposition of a sales and use tax. A municipality wishing to impose such a tax under A.C.A. § 14-174-101 to -109 must, in accordance with A.C.A. § 14-174-104, rely on statutory authority outside A.C.A §14-174-101 to -109. Again, without reference to all the facts regarding a particular city, I cannot determine whether it has exhausted its authority under such other laws. Consultation with the city attorney, other counsel for the city in question, or bond counsel is advisable.
Question 2 — In addition, if a city has an advertising andpromotion tax, can the proceeds be used for economic developmentactivities such as director's salary, marketing, and/or officeequipment?
I assume this question refers to an advertising and promotion tax previously levied by the city. I have enclosed a copy of Op. Att'y. Gen. 2003-272, which should answer the question posed in this regard.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh
Enclosure
[1] This Act was later amended, however, to permit the use of this sales tax for capital improvements. See Hasha, supra,
stating that "Act 25 of 1981, summarized above, was amended by Act 726 of 1983 to authorize cities, after a public vote, to pledge tax collections from the `operating penny' to finance capital improvements. See Ark. Code Ann. 26-75-201—26-75-223
(1987 Supp. 1991). Thus, the `operating penny' is no longer limited to providing services, but can now be converted to pay for capital improvements. . . ." Id. at 463. See also, A.C.A. §§ 26-75-201(c)(2) (Supp. 2005) and 26-75-206 (Repl. 1997).
[2] Again, without reference to the exact facts surrounding the current levies, I cannot come to any conclusions in this regard. It is possible that the city in question has not exhausted such authority. See e.g., Ops. Att'y. Gen. 1996-093 and 1994-058.